IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division

T.S.,

        Plaintiff,

v.                                                         Civil Action No.: 1:19-cv-__199__ (Kleeh)

FAIRMONT STATE UNIVERSITY
BOARD OF GOVERNORS,
SHAWN EVANS,
PHI SIGMA PHI-EPSILON ZETA CHAPTER, INC. and
PHI SIGMA PHI NATIONAL FRATERNITY, INC.,

        Defendants.

ELECTRONICALLY FILED
10/25/2019
U.S. DISTRICT COURT
Northern District of WV

# COMPLAINT

Plaintiff, T.S., by undersigned counsel, hereby files her Complaint and states as follows:

## I.  STATEMENT OF JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1681 ("Title IX").

2. This Court has pendent jurisdiction over all State law claims herein asserted, pursuant to *United Mine Workers v. Gibbs*, 388 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966).

3. Venue in this Court is proper under 28 U.S.C. § 1391(b), because the action is based in part upon a federal question and the events giving rise to this claim took place in this judicial district.

## II.  PARTIES

4. Plaintiff T.S. is now and was at all times relevant hereto a citizen and resident of the State of West Virginia.

5. Plaintiff was, at all times relevant hereto, a student enrolled at Fairmont State University ("FSU"). This action is brought anonymously for the following reasons: Plaintiff seeks to reserve her privacy in this sensitive and highly personal matter; she wishes to avoid further embarrassment and psychological damage, as this case concerns a sexual assault, which is a matter of extreme privacy.

6. Fairmont State University is a public institution of higher education created and continued by the State of West Virginia, with its primary campus located in Fairmont, Marion County, West Virginia.

7. The business and educational affairs of FSU are under the control, supervision, and management of its governing body, Defendant, Fairmont State University Board of Governors, located in Fairmont, West Virginia.

8. Defendant FSU has established a position of Title IX Coordinator, who is charged with the responsibility of overseeing the dissemination of information regarding Title IX to students, staff and faculty; coordinating training for employees; maintaining Title IX grievance/complaint files; monitoring Title IX deputies in the investigation and disposition of complaints; and answering inquiries from university and community members.

9. Defendant FSU's Deputy Title IX Coordinators investigate complaints of sexual violence committed by FSU students against FSU students.

10. Defendant FSU also has an Office of Student Conduct, which holds hearings for students who allegedly have violated the FSU Student Conduct Code, including violations related to crimes and sexual violence.

11. Defendant Shawn Evans is resident of Marion County, West Virginia.

12. Defendant Phi Sigma Phi-Epsilon Zeta chapter (hereinafter "PSP-EZ") is a chapter of the Phi Sigma Phi national fraternity. PSP-EZ is a domestic non-profit West Virginia corporation, with its principal business address located at 9 Timothy Lane, Fairmont, West Virginia.

13. Defendant Phi Sigma Phi National Fraternity, Incorporated (hereinafter "PSP") is a non-profit corporation with its principal office address located at 9 Timothy Lane, Fairmont, West Virginia.

### III.   TITLE IX

14. The United States Department of Education's ("DOE") Office for Civil Rights ("OCR") enforces, among other statutes, Title IX of the Education Amendments of 1972, found at 20 U.S.C. § 1681 *et seq*. and its implementing regulations, 34 C.F.R. Part 106.

15. The DOE was authorized by Congress, pursuant to 20 U.S.C. § 1682, to promulgate regulations to govern the implementation, interpretation, and enforcement of Title IX.

16. The OCR has promulgated numerous documents outlining the requirements for an educational institution to be in compliance with Title IX, including a letter dated April 4, 2011 ("Dear Colleague Letter") which specifically addresses student-on-student sexual harassment, assault, and violence.

17. Title IX applies to Defendant FSU, because Defendant FSU receives Federal financial assistance.

18. The DOE has determined that the Dear Colleague Letter is a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, found at 72 Fed. Reg. 3432 (Jan. 25, 2007). United States Department of

Education Office for Civil Rights Dear Colleague Letter, April 4, 2011, n. 1.

19. Pursuant to 72 Fed. Reg. 3432, 3439, § I.3, a "guidance document" is "an agency statement of general applicability and future effect, other than a regulatory action . . . that sets forth a policy on a statutory, regulatory, or technical issue or an interpretation of a statutory or regulatory issue."

20. A "significant guidance document" is "a guidance document disseminated to regulated entities or the general public that may reasonably be anticipated to . . . (iv) Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in Executive Order 12866, as further amended." 72 Fed. Reg. 3432, 3439, § I.4.

21. The purpose of the Dear Colleague Letter is to provide educational institutions with clarity as to the requirements they must follow in order to be in compliance with the DOE.

22. The Dear Colleague Letter specifically outlines the requirements that educational institutions must follow regarding student-on-student sexual harassment and assault.

23. A failure to adhere to the requirements outlined in the Dear Colleague Letter could result in the loss of federal funding for an educational institution such as FSU.

24. An inappropriate response by an educational institution to student on student sexual violence may subject the student to a hostile educational environment.

### IV.   FACTUAL BACKGROUND

25. On or about October 28, 2017, Plaintiff went to a party where alcohol was being consumed at the Defendant Phi Sigma Phi-EZ chapter fraternity house located near the FSU campus.

26. Following the party, Plaintiff was violently and forcibly sexually assaulted by Defendant Evans, a fellow FSU student and member of FSU's football team, at an apartment adjacent to Plaintiff's dorm.

27. At the time of the incident, Plaintiff was a seventeen (17) year old freshman at FSU.

28. Plaintiff was obviously traumatized by the incident and did not immediately know how and to whom at FSU she needed to report the incident.

29. Following the sexual assault, Plaintiff felt threatened by Defendant Evans' presence on campus and feared leaving her dormitory room because she risked meeting or seeing him.

30. Upon information and belief, at some time following the incident, Defendant PSP-EZ held a meeting regarding Defendant Evans sexual assault of the Plaintiff.

31. As a direct result of the sexual assault and Plaintiff's fear of encountering Defendant Evans upon leaving her dormitory room, Plaintiff failed all of her registered classes in the Fall 2017 semester.

32. On or about December 29, 2017, Plaintiff informed her mother of the sexual assault and her mother immediately informed Defendant FSU.

33. Despite Defendant FSU allegedly initiating an investigation of Plaintiff's sexual assault shortly after the sexual assault occurred, Plaintiff's mother was never notified that her minor child had suffered a sexual assault.

34. On March 8, 2018, Defendant FSU warned Plaintiff, by letter, that she was not to have any contact with Defendant Evans and that any such contact may result in her expulsion from FSU.

35. Upon information and belief, Defendant FSU subsequently began an investigation into Plaintiff's sexual assault after it was reported by an officer in her sorority. As part of that investigation; Plaintiff was interviewed on two occasions.

36. Plaintiff was not informed about and is not aware of the specific nature and extent of Defendant FSU's investigation and any hearings that may have been conducted pursuant to FSU's policies.

37. On March 22, 2018, Defendant FSU informed Plaintiff by letter that it had completed its investigation. This investigation concluded that Defendant Evans had violated FSU's "University Policy – Sexual Assault."

38. In its March 22, 2018 letter, Defendant stated that it had imposed sanctions on Defendant Evans consisting of: (1) issuance of a no-contact order for both Plaintiff and Defendant Evans; (2) suspension of Defendant Evans for two semesters; and (3) unspecified counseling as a requirement for Defendant Evans' re-admission consideration.

39. As a result of the sexual assault suffered at the hands of a fellow FSU student, Plaintiff withdrew from FSU at the conclusion Spring 2018 semester as she feared Defendant Evans return to campus as well in addition to feeling unsafe on campus.

**COUNT I**
**VIOLATION OF TITLE IX - 20 U.S.C. § 1681 *et seq*.**

40. Plaintiff repleads *in haec verba* the allegations contained within the above paragraphs of this Complaint as if the same were set forth fully herein.

41. Defendant FSU's adverse actions, inactions, and failures, committed and perpetrated upon the Plaintiff, constitute unlawful sexual harassment and discrimination on the basis of gender.

42. The harassment and discrimination suffered by Plaintiff at the hands of the Defendant FSU was sufficiently severe, pervasive, and objectively offensive so as to create an abusive and hostile educational environment for Plaintiff, and it interfered with her ability to learn or participate in educational or extracurricular activities.

43. The Dear Colleague Letter focuses on how sexual harassment and violence creates a hostile educational environment in violation of Title IX when it is serious enough to interfere with a student's ability to learn or participate in educational or extracurricular activities.

44. For the purposes of a FSU Title IX investigation, one single instance of sexual violence is sufficient to qualify as creating a hostile educational environment.

45. Defendant FSU did not provide Plaintiff with periodic updates on the investigation, as required by Title IX and its implementing policies.

46. Defendant FSU did not provide Plaintiff with a balanced and fair investigative and hearing process with the same opportunities to both Plaintiff and her assailant, and this in turn led to an unsound and unsupportable decision in the expulsion proceeding, in violation of Title IX and its implementing policies.

47. Defendant FSU failed to address Plaintiff's Title IX complaint adequately, appropriately, reliably, impartially, and reasonably.

48. Defendant FSU's adverse actions, inactions, and failures, amount to deliberate indifference toward the unlawful sexual conduct committed by Plaintiff's assailant, and which could be committed by Plaintiff's assailant.

49. Defendant FSU is deemed deliberately indifferent to the student-on-student violence committed against Plaintiff, due to Defendant FSU's clearly unreasonable handling of the Title IX investigation.

50. Plaintiff was subject to continuing fear, and she lost educational opportunities.

51. Defendant Evans' presence on the FSU campus subjected Plaintiff to additional harassment, by making her vulnerable to encounters with her assailant, for the time period after her attack on October 27, 2017 and Defendant Evans' suspension in March 2018.

52. Based upon information and belief, Defendant FSU failed to properly train and educate its employees, including school officials, officers, investigators, and adjudicators in appropriate response to allegations of sexual harassment and abuse, as well as the attendant Title IX policies and procedures which Defendant FSU violated.

53. Defendant FSU acted with deliberate indifference towards Plaintiff's report of sexual assault, as reflected by Defendant FSU's adverse actions, inactions, and failures, as alleged herein.

54. Defendant FSU's inquiry into Plaintiff's sexual assault was not thorough and was not impartial, as required by Title IX.

55. Defendant FSU's inquiry into Plaintiff's sexual assault was not adequate and was not reliable, as required by Title IX.

56. Defendant FSU's investigation and hearing processes into Plaintiff's sexual assault was not equitable and was not impartial, as required by Title IX.

57. Defendant FSU acted with deliberate indifference in deviating significantly from the standard of care outlined in the DOE Dear Colleague Letter and Defendant FSU's own policies.

58. One single instance of sexual violence is sufficient to qualify as creating a hostile education environment.

59. Defendant FSU created and subjected Plaintiff to a hostile education environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 (a) in some or all of the following particulars:

   a. In failing to properly punish perpetrators of sexual assaults, thereby creating a hostile environment that fails to discourage or prevent sexual assaults, and favors the perpetrators of sexual assaults as opposed to the victims;

   b. In failing to properly train and educate its employees regarding inappropriate response to allegations of sexual abuse and harassment, as well as the attendant Title IX policies and procedures;

   c. In offering Defendant Evans reinstatement despite his admitted violation of the Student Code of Conduct;

   d. In offering Defendant Evans reinstatement so that he may continue his education this elevating his interest above the Plaintiff's.

60. As a result of Defendant FSU's adverse actions, inactions, violations, and failures, Plaintiff suffered ongoing fear of encountering her assailant on campus, she was deprived of a multitude of educational opportunities and/or benefits, and suffered negative consequences including but not limited to: a significant drop in grades, avoidance of social activities on campus, avoidance of certain areas of campus, and withdrawal from FSU.

## COUNT II
## NEGLIGENCE AGAINST FAIRMONT STATE UNIVERSITY

61. Plaintiff repleads *in haec verba* the allegations contained within the above paragraphs of this Complaint as if the same were set forth fully herein.

62. At all times relevant hereto, Defendant FSU had a duty to take reasonable measures to protect the Plaintiff as a student of Defendant FSU's institution, because Defendant

FSU knew that Defendant Evans had committed an act of sexual violence against a fellow student, and that Plaintiff had complained of his acts to Defendant FSU.

63. Defendant had the ability to control Defendant Evans' access to the FSU campus, where Plaintiff went to school.

64. Defendant FSU had a duty to take reasonable protective measures to protect Plaintiff from the risk of sexual abuse and/or sexual assault, such as the duty to properly warn, train, or educate Defendant FSU's employees in the handling of Title IX complaints, such as the one made by Plaintiff to Defendant FSU.

65. A special relationship existed between the Plaintiff and Defendant FSU, as the Plaintiff was entrusted to the care of Defendant FSU, as a student enrolled at FSU, and Defendant FSU voluntarily accepted the entrusted care of Plaintiff.

66. Defendant FSU, by and through its agents, servants, or employees, knew or reasonably should have known that it was required to treat Plaintiff impartially and equitably in its Title IX investigation into her sexual assault, and Defendant FSU knew or reasonably should have known that it was required to complete an adequate, thorough, and reliable investigation, which it failed to do.

67. Defendant FSU knew or reasonably should have known that it was required to act without deliberate indifference and that it should not deviate significantly from the standard of care outlined in the DOE Dear Colleague Letter and Defendant FSU's own policies.

68. With this knowledge by Defendant FSU, it was foreseeable that harm would come to Plaintiff, in that her assailant was negligently permitted by Defendant FSU to remain on its campus and that Plaintiff would be vulnerable to another sexual assault.

69. Defendant FSU, by and through its agents, servants, and employees acting within the course and scope of their employment at all times relevant hereto, breached its duty of care to Plaintiff by deviating significantly from the standard of care outlined by the DOE in the Dear Colleague Letter and in Defendant FSU's own policies.

70. Defendant FSU breached its duty of care to Plaintiff by engaging in conduct including, but not limited to: failing to properly train and/or educate its agents, servants, and employees in the proper handling and investigation of Title IX complaints, including the adjudicatory process involving Defendant Evans' expulsion proceeding; failing to supervise its agents, servants, and employees to ensure a proper investigation into Plaintiff's Title IX complaint and to ensure a fair hearing process involving Defendant Evans' expulsion proceeding; and failing to conduct an investigative and hearing process within the appropriate professional standard of care.

71. But for the intentional and negligent acts and omissions of Defendant FSU as set forth herein, and Defendant FSU's violations of the standards of care, statutes, regulations, and policies applicable to Title IX, Plaintiff would not have been injured.

72. Defendant FSU's intentional and negligent acts and omissions amount to negligence, negligent failure to train and/or educate, failure to supervise, and constitutes negligence *per se*, all of which is the direct and proximate cause of harm and damages to Plaintiff.

73. As a direct and proximate result of the above-described conduct and failures to act of the Defendant FSU, Plaintiff has sustained losses and damages of body and mind; she has suffered and continues to suffer great pain of mind, shock, emotional distress, with physical manifestations of emotional distress, torment, embarrassment, loss of self-esteem, disgrace,

humiliation, and loss of enjoyment of life; she has suffered aggravation and inconvenience; she has suffered and continues to suffer spiritually, was prevented and will continue to be prevented from performing daily activities, and is unable to obtain the full enjoyment of life; she has sustained loss of earnings and earning capacity; she has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling; and she has suffered other losses and damages, liquidated, unliquidated, special, and general.

## COUNT III
### SEXUAL ASSAULT (against Defendant Evans)

74. Plaintiff repleads *in haec verba* the allegations contained within the above paragraphs of this Complaint as if the same were set forth fully herein.

75. On or about October 27, 2017, Defendant Evans engaged in sexual intrusion of Plaintiff without her consent.

76. On or about October 27, 2017, Defendant Evans engaged in acts which caused imminent apprehension of harmful or offensive contact, including contact of a sexual nature.

77. Plaintiff has suffered damages from Defendant Evans' sexual assault, including but not limited to emotional distress, pain, suffering and mental anguish.

## COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against Defendant Evans)

78. Plaintiff repleads *in haec verba* the allegations contained within the above paragraphs of this Complaint as if the same were set forth fully herein.

79. On or about October 27, 2019, Defendant Evans engaged in extreme and outrageous conduct of Plaintiff including rape and sexual assault.

80. Defendant Evans' conduct was intentional and/or reckless.

81.     Defendant Evans' conduct caused Plaintiff to suffer severe emotional distress, anxiety, stress and fear for which she has sought medical treatment and counseling.

82.     Plaintiff has suffered damages from Defendant Evans' sexual assault, including but not limited to emotional distress, pain, suffering and mental anguish.

## COUNT V
### NEGLIGENCE (Against Defendants PSP and PSP-EZ)

83.     Plaintiff repleads *in haec verba* the allegations contained within the above paragraphs of this Complaint as if the same were set forth fully herein.

84.     Defendants PSP and PSP-EZ were in a host-invitee relationship with Plaintiff based upon her attendance as a guest at a social event at their chapter fraternity house.

85.     Defendants PSP and PSP-EZ assumed a duty of care over Plaintiff when it offered to transport Plaintiff from its fraternity house by one of its members.

86.     Rape and sexual assault were foreseeable risks at parties involving alcohol at the PSP-EZ fraternity house.

87.     On October 27, 2017, it was foreseeable that female invitees at the PSP-EZ fraternity house could be at risk of being sexually assaulted, particularly at social events where alcohol was served.

88.     Defendants PSP and PSP-EZ breached their duties by not taking reasonable precautions to prevent its members from committing acts of rape or sexual assault, or fostering or enabling an environment in which a foreseeable act of rape or sexual assault would be committed.

89.     Defendants PSP and PSP-EZ breached their duties to Plaintiff by not taking reasonable precautions to protect Plaintiff from rape and/or sexual assault.

90.     As a direct and proximate result of Defendants' PSP and PSP-EZ's negligence, Plaintiff was sexually assaulted.

91. Plaintiff has suffered damages as a result of Defendants' PSP and PSP-EZ's negligence.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for compensatory damages, punitive damages, costs, interest, statutory and civil penalties according to law, attorney's fees and costs of litigation and for such other and further relief as this Court deems appropriate, just, and equitable.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS

*/s/Robert B. Warner*
Robert B. Warner (WVSB#7905)
Kameron T. Miller (WVSB #10774)
Warner Law Offices, PLLC
227 Capitol Street
Post Office Box 3327
Charleston, West Virginia 25333
(304) 345-6789
(304) 344-4508 (facsimile)
Bwarner@wvpersonalinjury.com
Kmiller@wvpersonalinjury.com